The Honorable Barbara J. Rothstein

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

ABSHER/KITCHELL J.V.,

10

Plaintiff,

No. 3:20-cv-05917-BJR

11

v.

12

PUYALLUP TRIBE OF INDIANS,

13

Defendant.

DEFENDANT'S RESPONSE TO
PLAINTIFF'S PETITION TO
COMPEL ARBITRATION

14

**NOTE ON MOTION CALENDAR**:
October 9, 2020

15

16

17

18

19

20

21

22

23

24

25

26

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400   FAX (206) 447-9700

## **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................1

II.     ADDITIONAL BACKGROUND ..............................................................................1

        A.      The immunity provision of the contract bars contractually improper
                claims. .................................................................................................................2

        B.      The contract bars "pass-through" claims against the Tribe on behalf of
                A/K's subcontractors. ........................................................................................3

III.    ARGUMENT ..............................................................................................................6

        A.      A/K has not alleged that the contract evidences a transaction involving
                commerce, and it does not. ...............................................................................6

        B.      The purported claims that A/K seeks to arbitrate do not fall within the
                scope of the agreement to arbitrate. ................................................................8

                1.      The immunity provision of the contract bars A/K's improper
                        attempt to advance claims it waived under the contract with respect
                        to Sturgeon. ..............................................................................................9

                2.      The contract bars A/K's "pass-through" claims against the Tribe
                        on behalf of A/K's subcontractors. ......................................................11

        C.      An arbitrator should not determine arbitrability in this case. ................................12

        D.      The Tribe did not waive its right to raise sovereign immunity as a
                jurisdictional bar. ............................................................................................17

IV.     CONCLUSION.........................................................................................................18

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- i
Case No. 3:20-cv-05917

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

1

2

## **<u>TABLE OF AUTHORITIES</u>**

3

**Page(s)**

### **CASES**

4

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
   785 F.3d 1320 (9th Cir. 2015) ...........................................................................................6

*Boardman v. Pac. Seafood Grp.*,
   822 F.3d 1011 (9th Cir. 2016) .........................................................................................6, 7

*Bodi v. Shingle Springs Band of Miwok Indians*,
   832 F.3d 1011 (9th Cir. 2016) ...........................................................................................18

*Cadet v. Snoqualmie Casino*,
   __ F.Supp.3d __, 2020 WL 3469222 (W.D. Wash. June 25, 2020) ...................................18

*Chemehuevi Indian Tribe v. Cal. State Bd. of Equalization*,
   757 F.2d 1047 (9th Cir. 1985) ...........................................................................................13

*Cherokee Nation v. Georgia*,
   30 U.S. 1 (1831) .................................................................................................................7

*Comanche Indian Tribe v. 49, L.L.C.*,
   391 F.3d 1129 (10th Cir. 2004) ...........................................................................................7

*Cotton Petroleum Corp. v. New Mexico*,
   490 U.S. 163 (1989) ............................................................................................................7

*Demontiney v. United States*,
   255 F.3d 801 (9th Cir. 2001) ..............................................................................................9

*Dep't of Transp. v. White Oak Corp.*,
   946 A.2d 1219 (Conn. 2008) .............................................................................................13

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995)......................................................................................................12, 17

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
   561 U.S. 287 (2010)........................................................................................................8, 13

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002)...........................................................................................................8, 12

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**FOSTER GARVEY PC**
**1111 THIRD AVENUE, SUITE 3000**
**SEATTLE, WASHINGTON 98101-3292**
**PHONE (206) 447-4400  FAX (206) 447-9700**

*In re Van Dusen*,
   654 F.3d 838 (9th Cir. 2011) ........................................................................7

*Kan. City S. v. Port of Corpus Christi Auth.*,
   305 S.W.3d 296 (Tex. Civ. App. 2009) .........................................................13

*McClendon v. United States*,
   885 F.2d 627 (9th Cir. 1989) .......................................................................13

*Money Mailer, LLC v. Brewer*,
   Case No. C15-1215RSL, 2016 WL 11479219 (W.D. Wash. Nov. 15, 2016) ........................15

*Mount Adams Sch. Dist. v. Cook*,
   81 P.3d 111 (Wash. 2003) ...........................................................................14

*Nelson v. Westport Shipyard, Inc.*,
   163 P.3d 807 (Wash. Ct. App. 2007) .............................................................16

*Puyallup Tribe v. Dep't of Game*,
   433 U.S. 165 (1977)......................................................................................14

*San Antonio River Auth. v. Austin Bridge & Rd., L.P.*,
   601 S.W.3d 616 (Tex. 2020) .........................................................................13

*Santa Clara Pueblo v. Martinez*,
   436 U.S. 49 (1978).........................................................................................9

*Satomi Owner's Ass'n v. Satomi, LLC*,
   225 P.3d 213 (Wash. 2009) ..........................................................................15

*Shivkov v. Artex Risk Sols., Inc.*,
   No. 19-16746, 2020 WL 5405687 (9th Cir. Sept. 9, 2020) ....................................13

*Tacoma Narrows Constructors v. Nippon Steel-Kawada Bridge, Inc.*,
   156 P.3d 293 (Wash. Ct. App. 2007) .............................................................16

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*,
   489 U.S. 468 (1989).......................................................................................8

*Wells Fargo Bank v. Apache Tribe*,
   360 P.3d 1243 (Okla. Civ. App. 2014) .............................................13, 16, 17

*Wilson v. Marchington*,
   127 F.3d 805 (9th Cir. 1997), *cert. denied*, 523 U.S. 1074 (1998)..........................7

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- iii
Case No. 3:20-cv-05917

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

*Wisconsin v. Ho-Chunk Nation*,
    512 F.3d 921 (7th Cir. 2008) .................................................................................13

*World Fuel Servs., Inc. v. Nambe Pueblo Dev. Corp.*,
    362 F. Supp. 3d 1021 (D. N.M. 2019) .......................................................................8

## STATUTES

Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ...................................................... passim

RCW 7.04A.060(2) ...................................................................................................17

## OTHER AUTHORITIES

2 Bruner & O'Connor Construction Law § 5:26 .........................................................10

U.S. Const. art. I, § 8, cl. 3.........................................................................................7

Werner Sabo, *Legal Guide to AIA Documents* § 4.86 (6th ed. 2020)...........................10

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

## I.  INTRODUCTION

The Court should dismiss Plaintiff Absher/Kitchell J.V. ("A/K")'s Complaint and deny A/K's Petition to Compel Arbitration for all of the reasons set forth in the Defendant's Motion to Dismiss filed contemporaneously herewith. Even if this Court does not dismiss the Plaintiff's Complaint, it should deny the Plaintiff's Petition to Compel Arbitration because it does not meet the standard for such a motion to compel.

Specifically, the parties' agreement does not fall under the Federal Arbitration Act ("FAA"), and the claims asserted by A/K are outside the scope of the contractual arbitration provision and the Defendant Puyallup Tribe of Indians' immunity waiver. The parties in this case agreed that any action to enforce the arbitration provision would be heard in the Puyallup Tribal Court. Dkt. # 5-1 at p. 2-3 (stating that "[a]ny dispute" shall be settled by the dispute resolution procedures "and not by any court action *except as specifically provided in Section 12.2.2.4*," which section provides that "[t]he Parties agree that the obligation to arbitrate under this Agreement shall be final and may be specifically enforced *in the Tribal Court of the Puyallup Tribe of Indians*."). Applicable law and the parties' contract mandate that the Puyallup Tribal Court, and not an arbitrator, must determine arbitrability in this case. Furthermore, the Tribe did not waive its right to assert sovereign immunity as a jurisdictional bar to A/K's improper attempts to arbitrate claims that are not permissible under the parties' contract.

The Tribe makes a limited appearance in this case to assert its immunity and contest jurisdiction, but reserves its sovereign immunity to the fullest extent of the law.

## II.  ADDITIONAL BACKGROUND

General background information regarding the contract between A/K and the Puyallup Tribe of Indians ("Tribe"), and the arbitration agreement therein, is provided in the Tribe's Motion to Dismiss. Def.'s Mot. to Dismiss at pp. 1-3. Additional background information relevant to A/K's Petition to Compel Arbitration follows.

In the arbitration provision of the parties' contract, the Tribe provided a limited waiver of

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- 1
Case No. 3:20-cv-05917

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

its sovereign immunity from suit for the limited purpose of participating in dispute resolution procedures in strict accordance with the terms of the parties' contract. Dkt. # 5-4 at p. 27 § 12.2.2.5. But that waiver is strictly limited in two ways that are significant here. First, the parties' contract reserves the Tribe's immunity to any contractually improper claims. Second, the parties' contract bars "pass-through" claims on behalf of A/K's subcontractors.

A.    **The immunity provision of the contract bars contractually improper claims.**

In its contract with A/K, the Tribe agreed to waive its sovereign immunity *only as to claims asserted in strict accordance with the contract*, including the terms and conditions set forth in Article 15 (Claims and Disputes) of the A201 General Conditions, which form a part of the contract. *Id.* ("This limited waiver of sovereign immunity from unconsented lawsuit by the Puyallup Tribe of Indians shall be strictly construed and limited to its specific terms and conditions as set forth in this Section 12.2.3 [sic], and in conjunction with Section 13.1 [Governing Law] and Article 15 [Claims and Disputes] of AIA Document A201—2007.").

For purposes of this dispute, Section 15.2.6.1 of Article 15 is particularly relevant. Under that section, either party may demand that the other party file for mediation within 60 days after the project Architect's initial decision regarding a claim, and if the recipient party fails to do so, *both parties* waive the rights they might otherwise have had to pursue further dispute resolution proceedings with respect to the initial decision. *Id.* at p. 81 § 15.2.6.1.[1] Effectively, Section 15.2.6.1 creates a mechanism by which either party can force the other to either "accept or challenge" the Architect's initial decision regarding a claim, such that the claim does not linger unresolved and subject to a demand of mediation or arbitration at some later point in time. As

---

[1] Section 15.2.6.1 states in full:

Either party may, within 30 days from the date of an initial decision, demand in writing that the other party file for mediation within 60 days of the initial decision. If such a demand is made and the party receiving the demand fails to file for mediation with[in] the time required, *then both parties waive their rights to mediate or pursue binding dispute resolution proceedings with respect to the initial decision*.

(emphasis added).

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- 2
Case No. 3:20-cv-05917

1    discussed above, the Tribe provided its limited waiver of immunity on the express condition that

2    the waiver would "be strictly construed and limited to" the "specific terms and conditions as set

3    forth in . . . Article 15 of the AIA Document A201-2007," including Section 15.2.6.1. *Id.* at p. 27

4    § 12.2.2.5. Thus, A/K's advancement of its claims in violation of Article 15 is barred by the

5    Tribe's immunity.

6    **B.    The contract bars "pass-through" claims against the Tribe on behalf of A/K's subcontractors.**

7

8             In its contract with A/K, the Tribe consented to arbitration of claims ***by A/K only***. *Id.*

9    ("This limited waiver of sovereign immunity from unconsented lawsuit is expressly limited to

10   [A/K], and may not be assigned, transferred, or used by or on behalf of any other party, including

11   [A/K's] successor(s) and/or subcontractors, without the express written consent of the Puyallup

12   Tribe."). The Tribe did not consent to claims by any other party – instead, it expressly excluded

13   such claims. *Id.*

14           Ignoring both of these limitations on the Tribe's waiver of sovereign immunity, A/K has

15   improperly commenced arbitration proceedings against the Tribe that involve (1) claims that the

16   parties waived the right to arbitrate under Section 15.2.6.1 of the A201 General Conditions; and

17   (2) prohibited pass-through claims on behalf of A/K's subcontractors.

18           On October 28, 2019, A/K sent the Tribe a request to mediate the claims of Sturgeon

19   Electric Company, Inc. ("Sturgeon"), one of its subcontractors on the casino project. Decl. of Jon

20   Hongladarom, Ex. A (hereinafter, "Hongladarom Decl."). In contravention of Section 12.2.2.5 of

21   the contract, A/K did not purport to give written notice of its *own* claim against the Tribe. *Id.*

22   Instead, A/K's letter expressed skepticism about the amount of Sturgeon's claim, which A/K

23   candidly characterized as a "pass-through" claim. *Id.* The Tribe has repeatedly advised A/K that

24   the contract documents do not permit "pass-through" claims on behalf of A/K's subcontractors,

25   and has requested that A/K submit its *own* claim against the Tribe—if it has such a claim.

26   Hongladarom Decl. ¶ 7.

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- 3
Case No. 3:20-cv-05917

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400   FAX (206) 447-9700

On November 26, 2019, A/K forwarded to the Tribe a Notice of Claim from Western Partitions, Inc. ("WPI"), another of A/K's subcontractors on the project. Hongladarom Decl. Ex. B. As with Sturgeon, A/K did not assert its own claim; it merely forwarded WPI's claim to the Tribe. *Id.* ¶ 12 & Ex. B. Again, the Tribe has repeatedly advised A/K that it must submit its *own* claim against the Tribe, but A/K has refused to do so. Hongladarom Decl. ¶ 7.

As discussed above, the Tribe's limited waiver of sovereign immunity extends to contractually proper claims by A/K, but no one else; it does ***not*** permit A/K to merely "pass through" the claims of its subcontractors to the Tribe. Dkt. # 5-4 at p. 27 § 12.2.2.5. Underscoring this contractual requirement that A/K submit its own claim—rather than claims "on behalf of [an]other party"—the contract documents require A/K to review and vet potential claims for additional costs, as only those costs that constitute "Costs of the Work" under A/K's contract with the Tribe are reimbursable by the Tribe. *Id.* at 18-21.[2] A/K's contracts with its subcontractors also state that "[a]ny Subcontractor Claim which will affect or become part of a claim *which Absher/Kitchell J.V. is required to present pursuant to the Prime Contract* within a specified period of time or in a specified manner shall be received by Absher/Kitchell J.V. not less than five (5) working days preceding the time by which *Absher/Kitchell J.V.'s claim must be made* under the Prime Contract." Hongladarom Decl. ¶ 8 & Exs. F-G (emphasis added).

The contract terms listed above, among others, obligate A/K, as Construction Manager, to evaluate subcontractor claims to A/K in order to determine how (if at all) such subcontractor claims to A/K may result in Costs of the Work that may be reimbursable by the Tribe to A/K. If

---

[2] Specifically, under Section 6.1.1 of the A133 Contract, A/K is entitled to seek reimbursement from the Tribe only for reimbursable Costs of the Work; i.e., costs that were "necessarily incurred by the Construction Manager in the proper performance of the Work . . . [and] at rates not higher than the standard paid at the place of the Project except with the prior consent of the Owner." *Id.* at 18 § 6.1.1. A/K is responsible for substantiating its Claims to the Tribe. *Id.* at 80 § 15.1.1. It is also A/K's responsibility, *inter alia*, to "develop a system of cost control for the Work, including regular monitoring of actual costs for activities in progress and estimates for uncompleted tasks and proposed changes," *id.* at 15 § 2.3.2.8; to keep full and detailed records and accounts to substantiate all costs incurred, *id.* at 21 § 6.11; to make timely Claims on its own behalf to the Tribe for additional cost or time, *id.* at 53-54 §§ 3.2.4; *id.* at 80 §§ 15.1.2, 15.1.4, and 15.1.5; and, when making applications for payment, to provide such data substantiating its right to payment as the Tribe or the Architect may require, *id.* at 66 § 9.3.1.

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- 4
Case No. 3:20-cv-05917

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

A/K determines such reimbursable costs are presented in subcontractor claims to A/K, only then, and to that limited extent, may A/K submit *its own claim* to the Tribe for what it has determined to be any additional, properly reimbursable Costs of the Work.[3]

On March 2, 2020, A/K finally purported to submit a formal notice of claim regarding the Sturgeon matter to the Tribe. Hongladarom Decl. ¶ 9. However, A/K *still* did not assert its own claim against the Tribe—it mentioned only Sturgeon's claim. *Id*. ¶ 9 & Ex. H. And A/K specifically refused to provide the Tribe with A/K's own assessment of Sturgeon's claim, further indicating A/K's intent to merely "pass through" Sturgeon's claim, without having made any determination as to the validity or merit of Sturgeon's claim. *Id.* Nevertheless, the project Architect issued an initial decision regarding the purported claim on May 28, 2020. *Id*. ¶ 10. Then, on June 11, 2020, A/K specifically invoked the contract's "accept or challenge" provision by sending the Tribe a "demand pursuant to § 15.2.6 that the Tribe file for mediation within 60 days" of the initial decision. Hongladarom Decl. Ex. C.

Rather than continue to argue and prolong the parties' dispute, the Tribe decided to accept the initial decision in accordance with Section 15.2.6.1 of the A201 General Conditions, and did not demand mediation within the 60-day period. Hongladarom Decl. ¶ 11. Consequently, *both* parties waived the right to any further dispute resolution regarding that claim. Dkt. #5-4 at p. 81 § 15.2.6.1. Furthermore, under Section 12.2.2.5 of the A201 General Conditions, the Tribe's limited waiver of sovereign immunity does not extend to alternative dispute resolution of claims for which dispute resolution is waived under Section 15.2.6.1. *Id.* at 27 (stating that the Tribe's waiver of immunity "shall be strictly construed and limited to its specific terms and conditions as set forth in . . . Article 15" of the A201 General Conditions, which contains Section 15.2.6.1).

Despite the Tribe's repeated requests that A/K comply with the contract terms, A/K filed

---

[3] This requirement is not a mere technicality, as it protects the Tribe from unconsented disputes or litigation with parties other than A/K.

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- 5
Case No. 3:20-cv-05917

**FOSTER GARVEY PC**
**1111 THIRD AVENUE, SUITE 3000**
**SEATTLE, WASHINGTON 98101-3292**
**PHONE (206) 447-4400  FAX (206) 447-9700**

two demands for arbitration against the Tribe with the American Arbitration Association ("AAA") on July 30, 2020—one regarding the Sturgeon matter, and one regarding the WPI matter. Hongladarom Decl. Ex. D & E.

The claims A/K asserts in the demand for arbitration regarding the Sturgeon matter consist of claims that were resolved by the Tribe's acceptance of the Architect's initial decision under Section 15.2.6.1 of the A201 General Conditions. And, the claims A/K asserts in each demand for arbitration consist of the pass-through claims of Sturgeon and WPI, respectively. To explain this patent violation of the contract terms, A/K's legal counsel has suggested that A/K simply does not wish to mount a defense against the subcontractors' claims in the arbitration proceedings, but rather, that it wishes the Tribe to do so. Hongladarom Decl. ¶¶ 13-14.

Although the Tribe did not waive its sovereign immunity against these claims, A/K is attempting to force it into the Hobson's choice of either defending the improper claims or risking a determination of "default" in the arbitration proceedings. Accordingly, the Tribe asks this Court to deny A/K's Petition to Compel Arbitration.

## III. ARGUMENT

In determining whether to issue an order compelling arbitration under the FAA, the court may not review the merits of the dispute, but must limit its inquiry into (1) whether the contract containing the arbitration agreement evidences a transaction involving interstate commerce, (2) whether there exists a valid agreement to arbitrate, and (3) whether the dispute or disputes fall within the scope of the agreement to arbitrate. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1017-18 (9th Cir. 2016). The party seeking to compel arbitration has the burden to show that these factors are satisfied. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). The first and third factors are not met here.

## A.  A/K has not alleged that the contract evidences a transaction involving commerce, and it does not.

The FAA (codified at 9 U.S.C. §§ 1 *et seq.*) applies only to arbitration provisions in

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400   FAX (206) 447-9700

contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2; *Boardman*, 822 F.3d at 1018; *In re Van Dusen*, 654 F.3d 838, 842-43 (9th Cir. 2011). Here, not only does A/K not allege that the contract between A/K and the Tribe evidences a transaction involving commerce, the FAA's definition of "commerce" does not include Indian commerce.

The FAA defines commerce, with certain exceptions not relevant here, as:

commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation.

9 U.S.C. § 1. It is well established that an Indian tribe is not a "State," "Territory," or "foreign nation." *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 191-93 (1989) (tribes are not states); *Wilson v. Marchington*, 127 F.3d 805, 808-09 (9th Cir. 1997) (tribes are not territories), *cert. denied*, 523 U.S. 1074 (1998); *Cherokee Nation v. Georgia*, 30 U.S. 1, 20 (1831) (tribes are not foreign nations). Moreover, Indian commerce has been treated distinctly from interstate and foreign commerce as long as the United States has existed. *See* U.S. Const. art. I, § 8, cl. 3 (granting Congress the power to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."); *Cotton Petroleum*, 490 U.S. at 192 (emphasizing that these are distinct categories, with "very different applications").

While some courts have found that the FAA does apply in cases involving tribes, those decisions rely primarily on the normally-broad interpretation of the FAA's definition of "commerce," but do not carefully consider the issue. *See, e.g.*, *Comanche Indian Tribe v. 49, L.L.C.*, 391 F.3d 1129, 1131-32 (10th Cir. 2004) (deciding the issue without even discussing the FAA's definition of "commerce"). This appears to be a matter of first impression in the Ninth Circuit and the Western District of Washington. However, the matter can be resolved based on the plain language of the FAA, which does not include Indian commerce. A contract by an Indian tribe for services to be performed entirely within its Reservation thus plainly does not evidence a transaction involving commerce within the meaning of the FAA.

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- 7
Case No. 3:20-cv-05917

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

1    Accordingly, the first factor is not met because the parties' contract does not evidence a

2    transaction involving commerce.

3    **B.**  **The purported claims that A/K seeks to arbitrate do not fall within the scope of the agreement to arbitrate.**

4

5    Congress' primary purpose in passing the FAA was ***not*** to require arbitration in all

6    circumstances, but rather, to ensure that arbitration agreements are "enforced ***according to their***

7    ***terms***." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478-79

8    (1989) (emphasis added). Accordingly, the "FAA does not confer a right to compel arbitration of

9    any dispute at any time; it confers only the right to obtain an order directing that arbitration

10   proceed *in the manner provided for in [the parties'] agreement*." *Id.* at 474-75 (citing 9 U.S.C. §

11   4) (emphasis and alteration in original); *see also World Fuel Servs., Inc. v. Nambe Pueblo Dev.*

12   *Corp.*, 362 F. Supp. 3d 1021, 1099 (D. N.M. 2019) (stating that the "FAA was promulgated on

13   freedom of contract," and that the "FAA's purpose of enforcing parties' private agreements

14   predominates over its other goals"). The reach of the FAA is further limited by the rules

15   governing tribal waivers of immunity, which require this Court to construe the Tribe's waiver

16   narrowly and in favor of the Tribe, in accordance with the strong presumption against waiver of

17   tribal sovereign immunity.

18   It is axiomatic that "arbitration is a matter of contract and a party cannot be required to

19   submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter*

20   *Reynolds, Inc.*, 537 U.S. 79, 83 (2002). "Arbitration is strictly a matter of consent, and thus is a

21   way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to

22   arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (emphasis in

23   original; internal quotations and citations omitted)

24   Here, the claims that A/K seeks to arbitrate do not fall within the scope of the agreement

25   to arbitrate. The Tribe expressly provided only a ***limited*** waiver of its sovereign immunity in the

26   parties' contract, agreeing only to participate in dispute resolution procedures in strict

---

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- 8
Case No. 3:20-cv-05917

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

1    accordance with the terms of the agreement. Dkt. # 5-4 at pp. 26-27 §§ 12.2, 12.2.2.5. Thus, the

2    Tribe retains immunity to any claims that do not comply with the terms of the parties' contract.

3    As explained below, the claims that A/K seeks to arbitrate are not within the scope of the

4    arbitration provision in the parties' contract. The Tribe did not waive its sovereign immunity

5    with respect to these improper claims, and did not agree to arbitrate them.

6         As discussed in the Tribe's Motion to Dismiss, tribes possess inherent sovereign

7    immunity from suit and are therefore only subject to suit if Congress has authorized it or the

8    Tribe has waived it. *See* Def.'s Mot. to Dismiss at pp. 8-10. A tribe's waiver of sovereign

9    immunity "cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo v.*

10   *Martinez*, 436 U.S. 49, 58 (1978). There is a strong presumption against waiver, and any waiver

11   must be strictly construed in favor of the Tribe and not enlarged beyond what the express

12   language of the waiver required. *See id.*; *Demontiney v. United States*, 255 F.3d 801, 811 (9th

13   Cir. 2001).

14        In this case, the parties' contract expressly states that the Tribe's limited waiver "shall be

15   strictly construed and limited to its specific terms and conditions." Dkt. # 5-4 at p. 27 § 12.2.2.5.

16   That waiver is expressly limited in two key ways. First, the Tribe limited its waiver to claims

17   brought in strict accordance with the agreed-upon dispute resolution procedures of the contract.

18   *Id.* Second, the Tribe consented only to claims **by A/K, for A/K**. *Id.* The limitations and

19   conditions of the Tribe's waiver, including the requirement to adhere to the terms of the dispute

20   resolution procedures, must be strictly construed in favor of the Tribe, as the case law requires

21   and the contract itself provides.

       **1.    The immunity provision of the contract bars A/K's improper attempt to**
22           **advance claims it waived under the contract with respect to Sturgeon.**

23

24        A/K's claims on behalf of Sturgeon flout the terms and conditions of the agreed-upon

25

26

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- 9
Case No. 3:20-cv-05917

1    dispute resolution procedure[4] by demanding arbitration of a claim that is excluded from those the

2    Tribe agreed to arbitrate. As discussed above, A/K previously purported to give a notice of claim

3    for its subcontractor, Sturgeon. On May 28, 2020, the project Architect issued an initial decision

4    on that claim. Hongladarom Decl. ¶ 10. On June 11, 2020, A/K invoked the "accept or

5    challenge" contract term by sending the Tribe a "demand pursuant to § 15.2.6 that the Tribe file

6    for mediation within 60 days" of the initial decision. *Id*. ¶ 4 & Ex. C. Rather than continue to

7    argue and prolong the parties' dispute, the Tribe decided to accept the initial decision, and did

8    not file for mediation within the 60-day period. *Id*. ¶ 11.

9            This acceptance of the initial decision removed the claim from those to which the Tribe

10   waived its sovereign immunity: "If such a demand [to file for mediation] is made and the party

11   receiving the demand fails to file for mediation with[in] the time required, then both parties

12   waive their rights to mediate or pursue binding dispute resolution proceedings with respect to the

13   initial decision." Dkt. # 5-4 at p. 81 § 15.2.6.1. This is a standard provision of the A201 General

14   Conditions to which both parties agreed. *See* 2 Bruner & O'Connor Construction Law § 5:26

15   (failure to file for mediation after a demand is made under this standard provision "results in both

16   parties waiving their rights to mediate or pursue binding dispute resolution proceedings with

17   respect to the initial decision. In other words, the initial decision becomes final and binding on

18   the parties."); *see also* Werner Sabo, *Legal Guide to AIA Documents* § 4.86 (6th ed. 2020),

19   Westlaw LGAIA § 4.86 ("If the other side fails to timely file for mediation, then the initial

20   decision becomes final and not subject to appeal.").

21           The Tribe's limited waiver of sovereign immunity allows *only* claims brought in

22   compliance with the agreed-upon dispute resolution procedures. Dkt. 5-4 at p. 27 § 12.2.2.5

23   ("This limited waiver . . . shall be strictly construed and limited to its specific terms and

24   conditions as set forth in this Section 12.2.3 [sic], and in conjunction with Section 13.1

25

26   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [4]  The Tribe reserves the right to raise the other deficiencies of the claims in this proceeding, the arbitration
     proceedings, or any other proceeding.

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- 10
Case No. 3:20-cv-05917

[Governing Law] and Article 15 [Claims and Disputes] of the AIA Document A201-2007.").
Therefore, Section 15.2.6.1 serves in effect as a conditional limitation on the Tribe's consent to
dispute resolution following the initial decision, including mediation and arbitration: the Tribe
has only consented to continued dispute resolution of claims that are *not* waived under Section
15.2.6.1 and that otherwise comply with the contract. The Tribe's "acceptance" of the initial
decision after A/K's demand waives the claim and renders it beyond the scope of the Tribe's
consent to arbitrate. Consequently, the claim is barred by the Tribe's sovereign immunity.

### 2. The contract bars A/K's "pass-through" claims against the Tribe on behalf of A/K's subcontractors.

Under Section 12.2.2.5 of the contract, the Tribe's limited waiver of sovereign immunity
only allows claims *by A/K*, on its own behalf, against the Tribe:

> This limited waiver of sovereign immunity from unconsented lawsuit is expressly
> limited to [A/K], and may not be assigned, transferred, or used by or on behalf of
> any other party, including [AK's] successor(s) and/or subcontractors, without the
> express written consent of the Puyallup Tribe.

Dkt. 5-4 at p. 27 § 12.2.2.5. Despite that unambiguous limitation, all of A/K's purported claims
against the Tribe in arbitration are "pass-through" claims on behalf of A/K's subcontractors.
Indeed, in the WPI matter, A/K has never even given written notice of a claim of its own—it has
merely forwarded WPI's claim to the Tribe. Hongladarom Decl. Ex B & ¶ 12. And while A/K
(finally) purported to give a notice of claim in the Sturgeon matter, that communication did not
actually assert any claim of A/K's own. Hongladarom Decl. ¶ 9. Instead, it merely mentioned
Sturgeon's claim, which A/K had previously forwarded to the Tribe while expressly describing it
as a "pass-through" claim and expressing skepticism about its validity. *Id*. Ex. A.

In direct violation of the contract terms and in violation of the Tribe's sovereign
immunity, A/K's legal counsel has suggested that A/K is employing this tactic because A/K
simply does not want to defend against its subcontractors' claims; rather, it wishes the Tribe to
do so. Hongladarom Decl. ¶¶ 13-14. The claims set forth in the demands for arbitration are the

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- 11
Case No. 3:20-cv-05917

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

1    claims of A/K's subcontractors that A/K improperly seeks to pass through to the Tribe in

2    violation of the express limitation of the Tribe's waiver of sovereign immunity to claims by A/K

3    *only*. The law and the parties' contract do not allow A/K to improperly expand the scope of the

4    Tribe's limited waiver by passing these claims through to the Tribe and forcing the Tribe to bear

5    A/K's burden of defending against the claims.

6            Under well-established law, the Tribe's limited waiver of sovereign immunity must be

7    strictly construed and not expanded beyond its express terms. The Tribe's waiver here does not

8    include claims as to which the right to arbitrate has been affirmatively waived. And, by its

9    express terms, the Tribe's limited waiver *only* extends to claims by A/K (not pass-through claims

10   of A/K's subcontractors), and *only* includes claims brought in strict accordance with the agreed-

11   upon dispute resolution procedures. Claims that do not meet these requirements are barred by the

12   Tribe's sovereign immunity, and the Tribe cannot be forced into arbitration of such claims.

13   **C.    An arbitrator should not determine arbitrability in this case**.

14           As discussed in the Tribe's Motion to Dismiss, the Tribal Court is the proper forum to

15   determine whether A/K's claims exceed the scope of the Tribe's limited waiver of sovereign

16   immunity (and hence, the arbitration agreement). Def.'s Mot. to Dismiss at pp. 10-16. However,

17   even if this Court declines to dismiss A/K's Complaint as the Tribe has requested, it still should

18   *not* grant A/K's Petition to Compel Arbitration, which relies on the meritless argument that the

19   arbitrator should determine arbitrability.

20           The United States Supreme Court has explained that whether a dispute is arbitrable is

21   ordinarily a threshold matter for a court to decide. *First Options of Chi., Inc. v. Kaplan*, 514 U.S.

22   938, 942–43 (1995). This is especially true where governmental immunity is at stake, because

23   governmental immunity implicates the question of whether there is jurisdiction to allow a suit to

24   proceed and to enforce an award against the governmental entity in a judgment. *See Howsam v.*

25   *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002) ("potentially dispositive gateway

26   question[s]" raise "a 'question of arbitrability' for a court to decide"); *Shivkov v. Artex Risk Sols.,*

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- 12
Case No. 3:20-cv-05917

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400   FAX (206) 447-9700

*Inc.*, No. 19-16746, 2020 WL 5405687, at *9 (9th Cir. Sept. 9, 2020) (such gateway questions "are for judicial determination unless the parties clearly and unmistakably provide otherwise" (internal citation and quotation omitted)).[5]

> [C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, "the court" must resolve the disagreement.

*Granite Rock*, 561 U.S. at 299-300 (emphasis in original; internal citations omitted).

Whether a demand for arbitration is barred by sovereign immunity is a dispositive gateway question. *Dep't of Transp. v. White Oak Corp.*, 946 A.2d 1219, 1223 n.8 (Conn. 2008); *Kan. City S. v. Port of Corpus Christi Auth.*, 305 S.W.3d 296, 303 (Tex. Civ. App. 2009) ("We conclude that it is the judiciary's primary responsibility to decide whether an arbitration respondent's immunity has been waived."); *see also Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 939 (7th Cir. 2008) (stating that "the district court had the responsibility to determine which claims were arbitrable" in conjunction with a tribe's waiver of sovereign immunity); *Wells Fargo Bank v. Apache Tribe*, 360 P.3d 1243, 1251 (Okla. Civ. App. 2014) (rejecting an argument that incorporation of AAA's Commercial Arbitration Rules constituted an agreement that the arbitrator would decide the issue of arbitrability, which turned on tribal sovereign immunity). Thus, the judiciary must determine in the first instance the existence and boundaries of governmental immunity.

This outcome necessarily results from the jurisdictional nature of sovereign immunity. *McClendon v. United States*, 885 F.2d 627, 629 (9th Cir. 1989); *Chemehuevi Indian Tribe v. Cal. State Bd. of Equalization*, 757 F.2d 1047, 1051 (9th Cir. 1985), *rev'd on other grounds*, 474 U.S. 9 (1985); *see also Puyallup Tribe v. Dep't of Game*, 433 U.S. 165, 172 (1977) ("Absent an

---

[5] Some courts have held that an agreement to arbitrate is unenforceable against a local government to the extent it purports to submit immunity questions to an arbitrator. *See, e.g., San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, 601 S.W.3d 616, 626–28 (Tex. 2020).

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- 13
Case No. 3:20-cv-05917

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

effective waiver or consent, it is settled that a state court may not exercise jurisdiction over a recognized Indian tribe."). It is the judiciary's province to determine whether the Tribe waived its sovereign immunity against the claims A/K is now attempting to force it to arbitrate. This determination is also subject to the rules requiring immunity waivers to be construed narrowly and in favor of the tribe.

In sum, the parties' contract documents contain a limited and narrow waiver of only those claims that are (1) compliant with Section 15.2.6.1 of the A201 General Conditions and (2) filed by A/K on its own behalf. Here, because the Tribe's acceptance of the initial decision operated to waive further dispute resolution proceedings with respect to A/K's claim on behalf of Sturgeon, and because all of A/K's claims are "pass-through" claims on behalf of its subcontractors, the Tribe has not waived its immunity to A/K's purported claims.

Even if sovereign immunity were not a question for the courts (it is), the parties have not clearly and unmistakably agreed to arbitrate arbitrability; accordingly, there is a presumption that the question of arbitrability is for the courts to decide. The Tribal Court is the only forum specified in the parties' contract for an action (such as this one) to enforce the arbitration clause. Dkt. # 5-4 at p. 27 § 12.2.2.4. The express language stating that disputes over the obligation to arbitrate may be resolved by the Tribal Court is not the type of language that clearly and unmistakably evidences an intent to arbitrate arbitrability—such language is much clearer and more specific than the language at issue here. For example, contractual language specifically providing that "the merits of a grievance and the *substantive and procedural arbitrability* issues arising in connection with that grievance may be consolidated for hearing before an arbitrator" has been held to constitute clear and unmistakable agreement for the arbitrator to decide arbitrability. *Mount Adams Sch. Dist. v. Cook*, 81 P.3d 111, 112 (Wash. 2003) (en banc)

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- 14
Case No. 3:20-cv-05917

(emphasis in original);[6] *see also Satomi Owner's Ass'n v. Satomi, LLC*, 225 P.3d 213, 233 n.28 (Wash. 2009) (en banc) (finding clear and unmistakable agreement to arbitrate arbitrability when arbitration clause provided that disputes subject to binding arbitration included "[d]isputes concerning the issues that should be submitted to binding arbitration") (alteration in original).

By contrast, where, as here, there is a lack of such language, there is no clear agreement to arbitrate arbitrability. For example, in *Money Mailer, LLC v. Brewer*, this Court held that an arbitration clause stating that "any controversy or claim arising out of this Agreement . . . including any claim that this Agreement, or any part of it, is invalid, illegal or otherwise voidable or void, will be submitted to final and binding arbitration," coupled with an addendum stating that "[p]rovisions such as those that unreasonably restrict or limit . . . rights or remedies . . . such as the right to a jury trial may not be enforceable" was not a "clear and unmistakable delegation of arbitrability" because the addendum "suggests that there is recourse to courts in some cases." Case No. C15-1215RSL, 2016 WL 11479219, at *3 (W.D. Wash. Nov. 15, 2016). Likewise, in a case involving a tribal defendant, the court held that:

> although the definition of "Dispute" in the Loan Agreement is broad, there is no express reference to the issue of the arbitrator's jurisdiction in the list of the matters the parties are agreeing to arbitrate. This omission is more striking in light of the long-standing and clear federal law on this issue. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986).

*Wells Fargo*, 360 P.3d at 1250. The court in *Wells Fargo* further cautioned against interpreting silence to give arbitrators the power to arbitrate arbitrability, "*particularly . . . when one party to the arbitration agreement is an Indian tribe*." *Id*. at 1250-51 (emphasis added).

---

[6] The contract provides that it "shall be construed and interpreted in accordance with the laws of the State of Washington." Dkt. # 5-4 at p. 77 § 13.1.

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400   FAX (206) 447-9700

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Here, the parties' dispute resolution provision contains no reference to arbitrability or other language such as that discussed above. Instead, the Tribal Court is specifically designated as the forum for actions to enforce the arbitration clause. This language is significantly more specific than the language in *Money Mailer* that caused this Court to hold there was no clear agreement to arbitrate arbitrability. Thus, the contract documents here evidence an intent (or in the very least do not evidence a clear and unmistakable agreement otherwise) for the Tribal Court, rather than an arbitrator, to determine questions of arbitrability involving the enforcement of the arbitration clause and the limited waiver of sovereign immunity therein.

Furthermore, that the parties agreed to abide by the AAA rules "or, upon agreement of the Parties, a similar organization," Dkt. # 5-4 at p. 26 § 12.2.2.1, does not evidence clear and unmistakable intent to arbitrate arbitrability, particularly when (1) the same provision of the contract expressly provides that disputes over the obligation to arbitrate are to be handled by the Tribal Court and (2) the issue of arbitrability turns on sovereign immunity, which is an issue for the courts.

Even where parties fully incorporate the AAA rules, the issue of arbitrability still may be handled by courts. *See*, *e.g.*, *Nelson v. Westport Shipyard, Inc.*, 163 P.3d 807, 809, 814 (Wash. Ct. App. 2007) (holding that the court should resolve questions about the enforceability of an arbitration agreement, even though the arbitration clause incorporated the AAA's Commercial Arbitration Rules); *Tacoma Narrows Constructors v. Nippon Steel-Kawada Bridge, Inc.*, 156 P.3d 293, 298 (Wash. Ct. App. 2007) (finding no clear agreement to arbitrate arbitrability, despite an arbitration clause incorporating the International Chamber of Commerce's arbitration rules). Indeed, where—as here—the arbitrability issue turns on sovereign immunity, it is a threshold matter to be determined by the judiciary. *First Options of Chi.*, 514 U.S. at 942–43

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- 16
Case No. 3:20-cv-05917

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

1    (determining that, where the parties did not agree to submit the arbitrability question itself to

2    arbitration, the court should decide that question); *Wells Fargo*, 360 P.3d at 1251.

3           Even if sovereign immunity were not at issue (it is), the contract documents here do not

4    mandate the AAA rules—they allow the parties to select other rules by agreement. Dkt. # 5-4 at

5    p. 26 § 12.2.2.1. Such language can hardly be said to be a clear and unmistakable agreement to

6    arbitrate arbitrability. Moreover, that result would be inconsistent with Washington law, which

7    the parties agreed would be the law governing the interpretation of the Contract. RCW Section

8    7.04A.060(2) provides that "[t]he court shall decide whether an agreement to arbitrate exists or a

9    controversy is subject to an agreement to arbitrate."

10          Accordingly, it is not for the arbitrator to determine arbitrability in this case, because it is

11   a matter of sovereign immunity. Even if immunity were not at issue, there is no clear and

12   unmistakable agreement to arbitrate arbitrability. Therefore, this Court must presume that the

13   question of arbitrability is for the courts to decide.

**D.     The Tribe did not waive its right to raise sovereign immunity as a jurisdictional bar.**

           Finally, the Tribe did not waive its right to raise sovereign immunity as a jurisdictional

bar. A/K cites a provision from Section 12.2.2.5 for the proposition that it did. Dkt. #4 at p. 11.

That provision states: "The Puyallup Tribe agrees that it will not raise sovereign immunity from

unconsented lawsuit as a defense in a judicial action brought by [A/K] to enforce arbitration . . .

*in accordance with this Section 12.2*. Dkt. # 5-4 at p. 27 § 12.2.2.5 (emphasis added). As

discussed above, Section 12.2 conditions the Tribe's limited waiver on compliance with *all*

dispute resolution provisions. Like the other limitations the Tribe expressly placed in its waiver

of immunity, A/K ignores the requirement that the judicial action comply with Section 12.2.

           Far from complying with Section 12.2, A/K's action violates Section 12.2 in numerous

respects. As discussed above, A/K improperly attempts to advance barred claims and pass-

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- 17
Case No. 3:20-cv-05917

1   through claims. In addition, as discussed in the Tribe's Motion to Dismiss, A/K's action violates

2   the forum-selection clause of Section 12.2, which states that "[a]ny dispute" shall be settled by

3   the dispute resolution procedures "and not by any court action ***except as specifically provided in***

4   ***Section 12.2.2.4***," which section provides that "[t]he Parties agree that the obligation to arbitrate

5   under this Agreement shall be final and may be specifically enforced ***in the Tribal Court of the***

6   ***Puyallup Tribe of Indians***." Dkt. # 5-1 at p. 2-3; *see also* Def.'s Mot. to Dismiss at pp. 14-16.

7       A/K argues that the use of "may" in Section 12.2.2.4's directive that "the obligation to

8   arbitrate . . . may be specifically enforced in the Tribal Court of the Puyallup Tribe of Indians"

9   means that the Tribe somehow consented to other courts. To construe this clause as an express

10   waiver of immunity to federal court when this forum is *not mentioned* would effectively rewrite

11   the contract and expand the waiver's terms contrary to settled law. A waiver of sovereign

12   immunity cannot be implied, but must be unequivocally expressed in "'clear' and unmistakable

13   terms." *Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011, 1016 (9th Cir. 2016).

14   Here, the contract does not mention federal court, much less express the Tribe's consent to be

15   sued there. The same facts led this Court to dismiss a lawsuit against a tribe for lack of subject

16   matter jurisdiction in *Cadet v. Snoqualmie Casino*, __ F. Supp. 3d __, 2020 WL 3469222 *5-6

17   (W.D. Wash. June 25, 2020). The Court in *Cadet* reasoned that the tribe's limited waiver of

18   sovereign immunity authorizing the filing of tort claims in its tribal court "does not

19   unequivocally indicate that the Tribe has waived its immunity from suits filed in federal court."

20   *Id.* Here, the word "may" indicates that the Tribe is allowing *the specified* type of action against

21   it, but no more. Holding otherwise would violate the rule against implied waivers.

22       Thus, the Tribe did not waive its right to raise sovereign immunity as a jurisdictional bar

23   in this Court.

## IV. CONCLUSION

25       For the reasons discussed in its Motion to Dismiss filed contemporaneously herewith, the

26   Tribe asks this Court to dismiss A/K's Complaint. *See generally* Def.'s Mot. to Dismiss. This

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- 18
Case No. 3:20-cv-05917

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400   FAX (206) 447-9700

1
2
3
4
5
6
7
8
9
10

Court should deny A/K's Petition to Compel Arbitration for all of the same reasons. But even if the Court does not dismiss A/K's Complaint as requested, it should still deny A/K's Petition to Compel Arbitration for the reasons set forth herein. The parties' arbitration agreement is limited in scope by the Tribe's ***limited*** waiver of its sovereign immunity, which must be strictly construed according to its terms and in favor of the Tribe. The scope of the limited waiver (and hence the agreement to arbitrate) does ***not*** include claims that the parties have waived pursuant to the contract's dispute resolution procedures, or "pass-through" claims on behalf of A/K's subcontractors. These improper claims are the claims that A/K seeks to arbitrate against the Tribe. Accordingly, A/K's claims do not fall within the scope of the agreement to arbitrate, and A/K's Petition to Compel Arbitration should be denied.

11
       DATED this 5th day of October, 2020.

12
13
14
15
16
17
18
19

*By: s/Lauren J. King*
*By: s/Jon Hongladarom*
Lauren J. King, WSBA #40939
Jon Hongladarom, WSBA #16323
FOSTER GARVEY PC
1111 Third Avenue, Suite 3000
Seattle, Washington 98101-3292
Telephone: (206) 447-4400
Fax: (206) 447-9700
Email: lauren.king@foster.com
Email: jon.hongladarom@foster.com
*Counsel for Defendant Puyallup Tribe of Indians*

20
21
22
23
24
25
26

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- 19
Case No. 3:20-cv-05917

**CERTIFICATE OF SERVICE**

I hereby declare on October 5, 2020, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all of the parties *via* electronic service.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED:  October 5, 2020, at Seattle, Washington.

s/ Lauren J. King
Lauren J. King, WSBA #40939

DEFENDANT'S RESPONSE TO PETITION TO COMPEL- 20
Case No. 3:20-cv-05917